O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANGEL PENA, | ) | Case No. CV 08-01337 DDP |
| | ) | |
| Petitioner, | ) | **ORDER DENYING PETITION FOR** |
| | ) | **CERTIFICATE OF APPEALABILITY** |
| v. | ) | |
| | ) | [Petition filed on October 17, |
| UNITED STATES OF AMERICA, | ) | 2008] |
| | ) | |
| Respondent. | ) | |

**I. BACKGROUND**

On March 24, 2004, Angel Pena ("Petitioner") began contacting and negotiating with a confidential informant ("CI") of the Drug Enforcement Agency. (Presentence Report ("PRS") ¶ 10.) On June 17, 2004, Petitioner informed the CI that he would be able to sell six pounds of methamphetamine at a later date on the condition that the CI would initially purchase only one pound of methamphetamine. (PSR ¶ 18.) Petitioner arrived at the designated meeting point; when the CI obtained the drugs, he notified the police, and Petitioner was arrested. Petitioner, a Mexican national, claims he was not informed of his right to notify the Mexican consulate of

1  his detainment prior to the initiation of the adversarial process.
2  (Pet'r Mem. 1.)
3      On July 2, 2004, a federal grand jury returned an indictment
4  charging Petitioner and his co-defendants with conspiracy to
5  possess methamphetamine with intent to distribute, in violation of
6  21 U.S.C. § 846 (2006), and possession of methamphetamine with
7  intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and
8  (B)(1)(A) (2006).  (Indictment 1.)  Both charges involve the
9  possession and distribution of "more than 50 grams of actual
10 methamphetamine, a schedule II controlled substance."  (Id. at 2.)
11     On September 28, 2005, Petitioner pleaded guilty to count one
12 of the indictment: conspiracy to possess methamphetamine with
13 intent to distribute.  (Reporter's Transcript ("RT") 9/28/05 9:9-
14 11.)  The presiding judge, Judge W. Matthew Byrne, informed
15 Petitioner that a violation of 21 U.S.C. § 846, which requires
16 possession of more than 50 grams, carried a maximum sentence of
17 life in prison and a minimum sentence of ten years imprisonment.
18 (Id. at 16:12-15.)  After presenting the maximum and minimum
19 sentences, Judge Byrne asked whether Petitioner agreed that his
20 crime involved the government-charged amount of 298.5 grams of
21 methamphetamine.  (Id. at 20:18-21.)  Petitioner at first stated
22 that he "didn't know about that," (id. at 21:2-3), referring to the
23 amount of drugs seized, and several other times throughout the
24 hearing denied possessing the charged amount. (Id. at 28:6-7).
25 However, when Judge Byrne asked directly, "And the conspiracy
26 related to 298 grams," Petitioner responded "Yes."  (Id. at 21:21-
27 24.)
28

1    In exchange for the guilty plea, the government dismissed
2 count two of the indictment, "agreed to not file an enhancement
3 charge from a prior felony", and "recommend[ed] a three level
4 [sentence] departure for acceptance of responsibility."  (Id. at
5 22:12-20.)
6    On direct appeal, the U.S. Court of Appeals for the Ninth
7 Circuit held that Petitioner did in fact admit to the amount of the
8 drugs involved, and that the district court was required to impose
9 the statutory minimum sentence.  United States v. Pena, No. 05-
10 50013, 2007 WL 628-53, at *2 (9th Cir. Feb. 27, 2007).
11 Petitioner's habeas petition argued that: (1) failure to provide
12 consular notification violates the Vienna Convention on Consular
13 Relations; (2) Petitioner was prejudiced by ineffective assistance
14 of counsel; (3) the drug quantity involved, which increased the
15 mandatory minimum sentence, was neither admitted nor proved beyond
16 a reasonable doubt.  (Order Den. Pet. 3.)  On October 17, 2008,
17 Petitioner filed for a Certificate of Appealability ("COA").
18 (Docket 14.)

**II.  LEGAL STANDARD**

There is no automatic right of appeal from a final order denying a habeas petition.  28 U.S.C. § 2253(b).  Instead, a petitioner must first obtain leave to appeal by procuring a COA.  28 U.S.C. § 2253§(c)(1).  "A COA will issue only if the requirements of § 2253 have been satisfied."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  The requirements of § 2253 are met where the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This is demonstrated by a "showing that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The inquiry whether to issue a COA requires an overview of the claims the petitioner brought in the habeas petition and a general assessment of their merits. Miller-El, 537 U.S. at 336. The petitioner is not required to show that the petition will be successful. Id. at 337. "It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief." Id.

**III. DISCUSSION**

Petitioner provides no argument to support his request for a COA. Accordingly, the Court will independently review the issues raised in his habeas petition.

A. Consular Notification

In his petition, Petitioner claimed that his right to consular notification was violated as grounds for habeas corpus relief. Article 36(1)(b) of the Vienna Convention on Consular Relations provides that foreign nationals, at their request, may have their national consulate notified of their arrest.[1] This Court held that

---

[1] The Vienna Convention outlines the right to Consular Notification:

> If he so requests, the competent authorities of the receiving state shall, without delay inform the consular post of the sending state if, within its consular district, a national of that state is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested in prison, custody or detention shall also be forwarded by said authorities without delay.

(continued...)

4

Petitioner's Consular Notification claim failed because Petitioner had procedurally defaulted on his claim by not raising it on appeal.  (Order Den. Pet. 6.)  This Court also denies Petitioner's request for a COA on this issue.  No reasonable jurist could disagree that Plaintiff's issue was raised for the first time in his habeas petition.  Procedural default can be overcome by "demonstrating both cause for not raising the claim at trial, and prejudice from not having done so."  Sanchez-Llamas, 126 S. Ct. at 2682 (internal quotations ommitted).   However, as noted in this Court's previous order, "Petitioner has not alleged any reason for failing to raise the claim nor any prejudice as a result of the failure."  (Order Den. Pet. 6 fn. 4.)

Therefore, the Court denies Petitioner's request for a COA as to the issue of consular notification.

B.   Ineffective Assistance of Counsel

Petitioner's next argument for habeas relief was that his counsel was ineffective.  Assistance of counsel is ineffective and violates the Sixth Amendment when: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. Strickland v. Washington, 466 U.S. 668, 688-94 (1984).

Petitioner's argument was based on his attorney's failure to object to Judge Byrne's decision not to apply the "Safety Valve"[2]

---

[1](...continued)
Vienna Convention on Consular Relations, Article 36(1)(b), April 24, 1963, 21 U.S.T. 77, 101.

[2] The "Safety Valve" refers to a statutory provision 18
(continued...)

to his sentence, even though Judge Byrne commented on the unfairness of its application. No reasonable jurist could find that this constituted ineffective assistance of counsel, because an objection on the grounds indicated by Petitioner would have made no difference in his case. As noted in this Court's previous order, the Judge Byrne's commentary was in reference to a prior offense, Petitioner's 1993 felony conviction, which made Petitioner ineligible for the Safety Valve. Judge Byrne also noted that he was bound by the mandatory minimum. Accordingly, no reasonable jurist could find that an objection by Petitioner's counsel in this situation would have changed the outcome for Petitioner.

Therefore, the Court denies Petitioner's request for a COA as to the issue of ineffective assistance of counsel.

C.  Drug Quantity Admission

The last issue argued in the habeas petition was whether Petitioner had admitted the drug quantity involved, which increased the mandatory minimum sentence. The prosecution has the burden of proving, beyond a reasonable doubt, any fact that increases the maximum penalty for a crime. Apprendi v. New Jersey, 530 U.S. 466,

---

[2](...continued)
U.S.C. § 3553(f) and its corresponding sentencing guideline, see U.S. Sentencing Guideline Manual § 2D1.1(c)(2004); which allows the court to reduce the sentence below the mandatory minimum sentence when five criteria are met. The Safety Valve, codified at 18 U.S.C. § 3553(f), states:

> [T]he court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing...that--
> (1)the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines.

Petitioner had 2 criminal history points for his prior felony, rendering him ineligible for the Safety Valve.

490 (2000). Petitioner was convicted of violating 21 U.S.C. §841(b)(1)(A)(viii), which requires a ten year mandatory minimum sentence if the offense involves 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. If the quantity of drugs involved here were not admitted or proved, § 841(b)(1)(C) could not have required a mandatory minimum sentence and would have imposed a maximum sentence of 20 years for the violation of the conspiracy to distribute a controlled substance in schedule I or II. Id. at §841(b)(1)(C).

Here, Petitioner's argument that he did not expressly admit the quantity of drugs is directly contradicted by the record. After the trial court detailed the charges, including the quantity of the drugs involved, the court asked, "[a]re you guilty of the charged conspiracy that I've just related to you?" (RT 9/28/04 28:13-15.) Petitioner responded, "Yes. Yes." (Id.) Later, Judge Byrne elicited an express admission when he asked, "[a]nd the conspiracy related to 298 grams of . . . methamphetamine?" (Id. at 21:21-24.) Petitioner again responded "Yes." (Id.) Additionally, Petitioner explicitly stated that the CI intended to "buy five pounds" and that Petitioner "was involved in [the transaction] because [he] would call [the CI]." (Id. at 39-40:23-4). Five pounds of methamphetamine equates to over 2,000 grams, well above the 500 gram requirement of § 841(b)(1)(A). See U.S.S.G. § 2D1.1 application n.10(E) (2004). Further, the court explained the penalties for pleading guilty to the charges, specifically stating that the mandatory minimum sentence is ten years. Petitioner stated that he understood. (RT 9/28/04 16:12-16). By acknowledging

7

the minimum sentence and the reason for the minimum, Petitioner understood the scope of the guilty plea.

Therefore, the Court finds that no reasonable jurist could disagree with this Court's decision denying Petitioner's habeas claim on this issue.

**IV.  CONCLUSION**

For the above reasons, the Court DENIES Petitioner's request for a Certificate of Appealability.

IT IS SO ORDERED.

Dated: September 9, 2009

DEAN D. PREGERSON
United States District Judge